FILED
COURT OF APPEALS
DIVISION II

2015 JAN 13 AM 11: 14

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44704-5-II |
| Respondent, | |
| v. | |
| SILVERIO SANTIAGO, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Silverio Santiago appeals his third degree child molestation conviction. He argues that (1) the trial court violated his right to confront witnesses by not allowing him to cross-examine the complaining witness about a separate sexual encounter; (2) the State committed prosecutorial misconduct by misstating the burden of proof, encouraging the jury to disbelieve Santiago, and improperly bolstering evidence; (3) insufficient evidence supports his child molestation conviction; and (4) the trial court violated his right to counsel by imposing court-appointed attorney fees without the support of evidence that he could pay. Because (1) the error in restricting Santiago from cross-examining the complaining witness was harmless, (2) the prosecutor did not commit reversible misconduct, (3) sufficient evidence supports his conviction, and (4) the trial court did not err by imposing attorney fees, we disagree and affirm the conviction and imposition of fees.

FACTS

A.    *Encounter with MM*

Silverio Santiago was a friend of MM's family,[1] and was the boyfriend of her older sister. MM, who was fourteen, invited 21-year-old Silverio[2] to her house when no one else was home. They kissed and removed some of their clothing. Silverio engaged in sexual intercourse with MM.

About a year later, MM told her friend about the encounter with Silverio and another sexual encounter with his 23-year-old brother, Francisco. MM's mother learned of the disclosure and confronted MM. At first, MM admitted to her mother only that she had had a sexual encounter with a man named Armando.[3] The next day, however, she disclosed to her mother sexual encounters with Armando, Francisco, and finally Silverio. MM's mother alerted authorities.

Silverio was charged in an amended information with one count of third degree child molestation and one count of third degree child rape. At Silverio and Francisco's request, the court joined Silverio's trial with that of Francisco, who was charged with the same crimes against MM as Silverio was.

---

[1] MM, a minor, is identified here by her initials to protect her privacy.

[2] Because Silverio Santiago and his brother Francisco Santiago share the same last name, we refer to them by their first names for clarity. We intend no disrespect.

[3] Any criminal proceedings against Armando remained separate from the Santiagos' trial.

B.    *Pretrial Motion: Evidence of MM's Encounter with Armando*

At a pretrial hearing, Silverio argued that MM's statements regarding her alleged sexual encounters with Armando should be admitted. Silverio acknowledged that such testimony may be barred under the rape shield statute,[4] but argued that its probative value outweighed its prejudicial effect. Silverio also argued that the testimony was relevant to MM's credibility regarding whether she, in fact, had sexual intercourse with Silverio or whether she made up the allegations regarding Silverio in response to her mother's continued questioning. According to Silverio, MM first disclosed the encounter with Armando to her mother, then later revealed the encounters with the Santiagos. Silverio further argued that MM's statement was admissible as a prior inconsistent statement and that he needed to use it as impeachment to show that her story changed. Silverio also wanted to demonstrate that MM's descriptions of the three encounters (with Armando and both Santiagos) were identical except for the location of the encounters, which fact would have further impeached her credibility.[5]

---

[4] RCW 9A.44.020. The rape shield statute generally excludes evidence relating to the past sexual behavior of the complaining witness. It is designed to guard against the prejudicial inference that a victim's chastity and veracity are related. *State v. Sheets*, 128 Wn. App. 149, 155, 115 P.3d 1004 (2005).

[5] Silverio's counsel argued, "We have a young lady who, other than the issue of geography, is giving the exact same description of all three sexual encounters. She doesn't really distinguish between them. The conversation is the same. The condoms are the same. The - - how the clothes come off is the same. Everything is the same. And in order for the jury to understand that she's giving the same story, they have to be presented with all three stories." Verbatim Report of Proceedings (VRP) (Feb. 25, 2013) at 18.

The State argued that MM's testimony about the three incidents was not identical, as Silverio had claimed.[6] The State acknowledged that there was a "level of similarity" between the three encounters as described, but that MM's descriptions of the encounters were not exactly the same. Verbatim Report of Proceedings (VRP) (Feb. 25, 2013) at 24.

MM stated that her sexual encounter with Armando occurred after the encounter with Silverio. Because the encounter with Armando occurred after the encounter with Silverio, the court ruled that it was not past sexual behavior and the rape shield law did not apply. However, the trial court ruled that the revelation about MM's encounter with Armando was unfairly prejudicial, and there was nothing so unusual about the similarities between the encounters as described by MM to make the probative value of those similarities outweigh the prejudice.

C.    *Trial Testimony*

In compliance with the trial court's ruling, Santiago did not present evidence of MM's description of her encounter with Armando. However, MM testified on cross-examination that she initially lied by omission to her mother about her sexual encounters by not telling her about Silverio until after further questioning from her mother and after revealing her encounter with

---

[6] The prosecutor stated, "With Silverio, they [MM and Silverio] were texting. He came over to her house. They started kissing. They were on the living room couch. He asked if she wanted to have sex. She said sure. They had sex on the couch. He used a condom, put his penis in her vagina. . . . With Francisco, she says they were . . . supposed to go to the [Kitsap County Fair], but they went bowling instead. She says her sister and [Silverio] left, leaving her and Francisco alone at Evergreen Park, parked in a car. They were kissing. He asked if she wanted to have sex. She said sure. They had sex in the back seat of the car. He used a condom, put his penis in her vagina. Armando, she says she was at Armando's house practicing for a dance. He offered to take her home. On the way home, he parked the car. They began kissing, asked if she wanted to have sex. She said, It's okay with me. And again, he was wearing a condom, puts his penis in her vagina." VRP (Feb. 25, 2013) at 23-24.

4

Francisco. She also testified on cross-examination that her description of the encounter with Silverio was very similar to her description of the encounter with Francisco.

Silverio did not testify at trial. Detective Stroble testified about a phone call he made to Silverio, in which Silverio told him that "he knew who [MM] was; that he ultimately ended up at her mom's house; that the two of them kissed; that they . . . ended up naked on the couch and, at some point, decided not to have sex for a couple of reasons." VRP (Feb. 28, 2013) at 250. Detective Stroble also testified that Silverio said he "felt [MM] was obsessed with him; that she called him all the time to tell him that she loved him and called him 'baby.'" VRP (Feb. 28, 2013) at 253.

Unlike Silverio, Francisco admitted at trial that he had sexual intercourse with MM but presented the affirmative defense that MM had misrepresented her age to him.

D.      *Motion To Dismiss Child Molestation Charge*

At the close of evidence, Silverio moved to dismiss the child molestation count because the State had presented no evidence of sexual contact apart from kissing and sexual intercourse, so there was no evidence supporting a child molestation charge that did not also support the child rape charge. The trial court denied the motion.

E.      *Closing Arguments*

In closing arguments, the State reminded the jury multiple times that Silverio had no burden of proof. It argued, for example: "Silverio has no burden of proof. None. The burden of proof in Silverio's case is completely and totally on the State of Washington. The Defense can freely offer theories. They don't have to prove any of these theories." VRP (Feb. 28, 2013) at 327. In a set of slides shown during the State's closing argument, many of the slides were

5

clearly labeled "Silverio Santiago" or "Francisco Santiago." Clerk's Papers (CP) at 103-09. However, the final slide, labeled "Conclusion" and not indicating which brother or brothers it applied to, said: "Hold the defense to its burden." CP at 108.

Additionally in closing, the State argued to the jury: "Now, the presumption of innocence, though, isn't the same as the presumption of truthfulness or the presumption of honesty or the presumption of credibility. You may not have heard of those, because they don't exist. You don't have to go back in that jury room and say, well, they told me this happened, so that must be the way it happened. No. You judge their credibility just like you would judge everybody else's credibility. You judge Francisco's credibility, and you judge the credibility of Silverio through the statements that he made to Detective [Stroble]."[7] VRP (Feb. 28, 2013) at 324.

Finally, the slides shown during the State's closing argument asked the jury: "Do you believe [MM]?" CP at 108. The State also asked the jury to consider why MM would tell the truth about her encounter with Francisco but fabricate an encounter with Silverio. The slides also laid out a case for believing MM, reminding the jury of her demeanor and lack of motive to lie. The slides encouraged the jury a few times, worded in various ways, to weigh MM's credibility against that of the Santiagos.

Silverio argued in closing that MM's description of her encounters with Francisco and Silverio were very similar, which undermined her credibility. He also reminded the jury that MM had initially failed to tell her mother about Silverio, even after telling her about Francisco.

---

[7] The prosecutor mentioned Detective Swayze here, but Silverio spoke only to Detective Stroble. The prosecutor appears to have misspoken by naming the wrong detective.

Silverio also argued: "So what about the fact that it appears [MM] didn't lie about having sex with Francisco? It does appear that way. He testified he had sex with her. She testified he had sex with her. Does that make her accusation against [Silverio] more believable? No." VRP (Feb. 28, 2013) at 352. Apparently in response, the prosecution argued: "We know Francisco had sex with [MM]. We know she was telling the truth about that. Why she would come and make this up about Silverio, I don't know." VRP (Feb. 28, 2013) at 373.

A jury found Silverio guilty of third degree child molestation, but failed to reach a verdict as to the third degree child rape charge.[8] Silverio moved for arrest of judgment/judgment notwithstanding the verdict under CrR 7.4, arguing that the jury could not have found him guilty of third degree child molestation if it had not found him guilty of rape, because the lack of verdict on the rape charge showed that the jury had not found that Silverio had sexual intercourse with MM. He argued that, absent a finding of sexual intercourse, there was no evidence of any sexual contact.

F.    *Assessment of Fees*

At sentencing, the trial court imposed $1,135 in court-appointed attorney fees and $1,000 in other legal financial obligations (LFOs). The court entered a finding in the judgment and sentence that Silverio had the ability or likely future ability to pay these LFOs. The trial court did not address Silverio's current or future ability to pay these LFOs on the record, and Silverio did not object to the finding.

Silverio appeals.

---

[8] The jury failed to reach a verdict as to either count against Francisco.

ANALYSIS

I. RIGHT TO PRESENT A DEFENSE BY CROSS-EXAMINING ADVERSE WITNESSES

Silverio argues that the trial court violated his Sixth and Fourteenth Amendment rights when it refused to let him cross-examine MM about her encounter with Armando. U.S. CONST. amends. VI, XIV. Silverio refers to this allegation in his brief as his right to "confront" witnesses, but his legal contentions relate to his right to present a defense, not his confrontation clause rights. We disagree that his right to present a defense was violated because the error was harmless.

A.      *Standard of Review*

The federal and state constitutions guarantee the right to present a defense. *State v. Wittenbarger*, 124 Wn.2d 467, 474, 880 P.2d 517 (1994); U.S. CONST. amends. V, VI, XIV; WASH. CONST. art. I, § 22. But this constitutional right is not absolute and does not extend to irrelevant or inadmissible evidence. *State v. Maupin*, 128 Wn.2d 918, 925, 913 P.2d 808 (1996).

B.      *Sixth Amendment Violation: Harmless Error*

1. *Victim's Statements Admissible*

Both the federal and state constitutions protect the right of a defendant to present a defense, which includes meaningful cross-examination of adverse witnesses. U.S. CONST. amend VI; WASH. CONST. art. I, § 22, *see Washington v. Texas*, 388 U.S. 14, 17-19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). But this right is not absolute. *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The defendant's right to present a defense does not extend to presenting otherwise inadmissible evidence. *State v. Aguirre*, 168 Wn.2d 350, 362-63, 229 P.3d 669 (2010). If evidence is relevant and otherwise admissible, the burden shifts to the State to

show that the evidence is so prejudicial as to disrupt the fairness of the fact-finding process. *State v. Jones*, 168 Wn.2d 713, 720, 230 P.3d 576 (2010).

Here, Silverio sought to introduce evidence of MM's original statement to her mother that she had a sexual encounter only with a man named Armando. He argued that her description of the sexual encounter with Armando suggested that she fabricated the description of the encounter with Silverio in two respects. First, the fact that she initially told her mother about Armando but failed to tell her about the Santiagos suggested that she had fabricated the story about Silverio in response to her mother's continued questioning. Therefore, the testimony would reveal prior inconsistent statements. Second, he argued that her description of the encounter with Armando was identical to her description of her encounters with the Santiagos, which undermined her credibility.

This evidence would have been relevant for the reasons Silverio identified: it would have tended to show that MM described a sexual encounter to her mother before she told her about the Santiagos; it also would have tended to show that MM's description of all three sexual encounters bore similarities.

Furthermore, the evidence was admissible: the trial court found that the rape shield statute did not apply, and the parties do not challenge this ruling. The evidence was also

admissible under the ER 403 balancing test.[9] The probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. ER 403. The evidence had probative value regarding MM's veracity, because it demonstrated her inconsistent reporting about the sexual encounters and demonstrated that she delayed telling her mother about the Santiagos even after she told her about Armando. Also, there was very little danger of unfair prejudice: because MM was underage and unable to consent, evidence of her sexual encounters did not tend to show her character for promiscuity, but instead showed sexual encounters to which MM could not legally consent. *State v. Carver*, 37 Wn. App. 122, 124, 678 P.2d 842 (1984). Therefore, the danger of unfair prejudice did not substantially outweigh the probative value of this evidence, and ER 403 was not a bar to its admissibility.

Because the trial court here excluded relevant and otherwise admissible evidence, we look to whether this error was harmless.

### 2. *Harmless Error*

Error of a constitutional magnitude is harmless if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. *Jones*, 168

---

[9] In *State v. Aguirre*, our Supreme Court held that the scope of the right to present a defense "does not extend to the introduction of otherwise inadmissible evidence. . . . The admissibility of evidence under the rape shield statute, in turn, 'is within the sound discretion of the trial court.'" 168 Wn.2d 350, 363, 229 P.3d 669 (2010) (quoting *State v. Hudlow*, 99 Wn.2d 1, 17, 659 P.2d 514 (1983) (other citations omitted)). In *State v. Jones*, decided in the same term as *Aguirre*, our Supreme Court held that alleged violations of the Sixth Amendment right to present a defense are reviewed de novo. 168 Wn.2d 713, 719, 230 P.3d 576 (2010), *see also State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). We follow *Aguirre*, recognizing that the Sixth Amendment right to present a defense does not extend to inadmissible evidence, and we review a trial court's ruling on admissibility of evidence for an abuse of discretion.

Wn.2d at 724. We hold that this error was harmless beyond a reasonable doubt and does not require reversal.

Silverio sought to present two arguments to the jury by presenting the evidence of MM's story about Armando: first, he sought to show that she delayed telling her mother about her encounter with the Santiagos, although she described another sexual encounter earlier. Second, he sought to show that her stories were identical. Silverio was able to make both of these points without presenting the excluded testimony. Silverio was able to show that MM's story changed over time. He was able to cross-examine MM about her initial lie by omission to her mother about her sexual activity. Similarly, Silverio was able to show the jury that MM's description of her encounters with Francisco and Silverio were very similar. Therefore, Silverio was able to make both arguments without MM's testimony about Armando. We are convinced beyond a reasonable doubt that a reasonable jury would have reached the same result without the error.

## II. PROSECUTORIAL MISCONDUCT

Silverio argues that the prosecutor committed misconduct on four occasions in closing argument and that the cumulative effect of these incidents requires reversal. We disagree.

A.      *Standard of Review*

The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 3 and article I, section 22 of the Washington Constitution guarantee the right to a fair trial. *State v. Finch*, 137 Wn.2d 792, 843, 975 P.2d 967 (1999). Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial. *State v. Davenport*, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984).

To prevail on a prosecutorial misconduct claim, a defendant must show that in the context of the record and all the trial circumstances, the prosecutor's conduct was improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011). We consider the prosecutor's alleged improper conduct in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. *State v. Anderson*, 153 Wn. App. 417, 430, 220 P.3d 1273 (2009). To show prejudice, a defendant must show a substantial likelihood that the misconduct affected the jury verdict. *Thorgerson*, 172 Wn.2d at 442-43. The cumulative effect of multiple or repeated incidents of prosecutorial misconduct can warrant reversal. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006).

If a defendant fails to object to misconduct at trial, he waives the issue unless he establishes that the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. We focus less on whether the prosecutor's misconduct was flagrant and ill-intentioned and more on whether the resulting prejudice could have been cured. *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012). We consider whether there is a substantial likelihood that the misconduct affected the jury's verdict. *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

B.       *No Reversible Prosecutorial Misconduct*

1. *Burden Shifting*

Silverio argues that the prosecutor improperly shifted the burden of proof to Silverio when he asked the jury to "hold the defense to its burden." *See* CP at 108. This phrase appeared on a slide shown to the jury during closing arguments. This statement apparently referred to Francisco's charges. Francisco had argued the affirmative defense that MM had misrepresented

her age to Francisco. Silverio argues that this slide failed to differentiate between the two cases, and therefore, the prosecutor misled the jury into thinking that Silverio, who argued no affirmative defense, had the burden of proof. We disagree.

Taking the prosecutor's argument and the slide in the whole context of the argument, evidence, and jury instructions, the prosecutor did not commit misconduct. Throughout most of the slide show, each slide clearly bore the name of the defendant to whom it referred in large letters at the top (for example, "Silverio Santiago" or "Francisco Santiago" in bold.) *See* CP at 103-09. Two slides labeled "Silverio Santiago" clearly stated that "Silverio has no burden of proof." CP at 106. The prosecutor reiterated this in his oral argument: "Silverio has no burden of proof. None. The burden of proof in Silverio's case is completely and totally on the State of Washington. The Defense can freely offer theories. They don't have to prove any of these theories." VRP (Feb. 28, 2013) at 327. When he referred to Francisco's burden of proof, he explicitly was only referring to Francisco's case.

Taken in the context of the entire argument and all the slides, the prosecutor made abundantly clear that Silverio had no burden of proof. Therefore, the prosecutor did not shift the burden of proof and, thus, did not commit misconduct.

2. *Presumption of Innocence*

Silverio also argues that the prosecutor committed misconduct by undermining his presumption of innocence. The prosecutor argued to the jury in closing that the "presumption of innocence . . . isn't the same as the presumption of truthfulness or the presumption of honesty or the presumption of credibility. You may not have heard of those, because they don't exist." VRP (Feb. 28, 2013) at 324. Silverio argues that the presumption of innocence necessarily

13

equates to a presumption that the defendant told the truth, and that the presumption of innocence requires the jury to presume the defendant spoke honestly. We disagree.

When the prosecutor asked the jury to "judge the credibility of Silverio through the statements that he made to Detective [Stroble],"[10] and argued that there was no presumption of honesty, truthfulness, or credibility, he did not commit misconduct. VRP (Feb. 28, 2013) at 324. Without citing authority, Silverio argues that the presumption of innocence includes a presumption of truthfulness, honesty, and credibility. But the law is clear that the jury is the sole judge of credibility. *State v. Summers*, 107 Wn. App. 373, 389, 28 P.3d 780 (2001); *State v. Dietrich*, 75 Wn.2d 676, 677-78, 453 P.2d 654 (1969); *State v. Holbrook*, 66 Wn.2d 278, 279, 401 P.2d 971 (1965). Therefore, the prosecutor's statements that the jury was to judge Silverio's credibility and that the presumption of innocence did not include a presumption of truthfulness were an accurate statement of the law and did not constitute misconduct.

### 3. *Mischaracterized Burden of Proof*

Silverio argues that the prosecutor committed misconduct by mischaracterizing the burden of proof by arguing that the jury must find that the State's witnesses were lying in order to acquit Silverio. He points to the final slide in the closing argument, which asked the jury: "Do you believe [MM]?" CP at 108. Other slides highlighted that MM had no motive to lie. The prosecutor in closing argument emphasized the unlikelihood that MM would have wanted to get

---

[10] As stated above, Silverio told Detective Stroble that he knew [MM]; that he was with MM at her mom's house; that the two of them kissed; that they were on the couch naked and, decided not to have sex. Silverio also told Detective Stroble that Silverio "felt [MM] was obsessed with him; that she called him all the time to tell him that she loved him and called him 'baby.'" VRP (Feb. 28, 2013) at 253.

14

the Santiagos in trouble or otherwise fabricate the story. In effect, Silverio argues here that the prosecutor committed misconduct by encouraging the jury to find that MM was credible. We disagree.

This argument is without merit. Silverio mischaracterizes the prosecutor's argument. The prosecutor here merely reminded the jury of its duty to weigh conflicting testimony. Such arguments are valid under our law: a prosecutor may tell the jury that it is free to reject testimony that conflicts with more credible testimony. *State v. Evans*, 163 Wn. App. 635, 644, 260 P.3d 934 (2011). The prosecutor did not commit misconduct, and Silverio's argument fails.

### 4. *Improper Bolstering*

Silverio argues that the prosecutor committed misconduct by improperly bolstering the credibility of the State's witnesses. He argues that the prosecutor encouraged the jury to convict Silverio based on the evidence against Francisco. Silverio fails to show flagrant and ill-intentioned misconduct, so his claim fails.

In rebuttal to Silverio's closing argument,[11] the prosecutor argued, "We know Francisco had sex with [MM]. We know she was telling the truth about that. Why she would come and make this up about Silverio, I don't know." VRP (Feb. 28, 2013) at 373. Silverio did not object to this argument. He now argues that this argument improperly bolstered MM's credibility, encouraged the jury to convict him based on the evidence against Francisco, and operated as character evidence attempting to show conformity with MM's general character for truthfulness.

---

[11] In his closing argument, Silverio argued: "[W]hat about the fact that it appears [MM] didn't lie about having sex with Francisco? It does appear that way. He testified he had sex with her. She testified he had sex with her. Does that make her accusation against [Silverio] more believable? No." VRP (Feb. 28, 2013) at 352.

If a defendant fails to object to misconduct at trial, he waives the issue unless he establishes that the misconduct was so flagrant and ill-intentioned that an instruction could not have cured the prejudice. *Thorgerson*, 172 Wn.2d at 443. We do not reverse on the basis of a prosecutor's improper remarks if they are "in direct response to a defense argument," so long as they "do not 'go beyond what is necessary to respond to the defense and [they] must not bring before the jury matters not in the record, or be so prejudicial that an instruction cannot cure them.'" *State v. Francisco*, 148 Wn. App. 168, 178-79, 199 P.3d 478 (2009) (quoting *State v. Dykstra*, 127 Wn. App. 1, 8, 110 P.3d 758 (2005)).

Here, assuming without deciding that the comments constituted misconduct, we hold that Silverio fails to show that the prosecutor committed flagrant and ill-intentioned misconduct. The State has wide latitude to argue reasonable inferences from the evidence, including inferences of witness credibility. *Thorgerson*, 172 Wn.2d at 448. The Santiagos requested joinder of their trials, which guaranteed that the jury would hear evidence against both of them. The prosecutor responded to Santiago's argument that MM had told the truth only about her sexual encounter with Francisco. Had Silverio objected to this argument, the trial court would have had the opportunity to give a curative instruction that could have neutralized any possible prejudice from the prosecutor's challenged statement. Silverio has not shown that arguing such an inference about MM's credibility was flagrant and ill-intentioned misconduct. Silverio's failure to object to misconduct that is not flagrant and ill-intentioned operates as a waiver, and his argument fails.

Silverio argues that the cumulative effect of repeated instances of prosecutorial misconduct requires reversal. *Weber*, 159 Wn.2d at 279. But Silverio demonstrates only one

16

possible instance of misconduct; therefore, there can be no cumulative effect. His prosecutorial misconduct arguments fail.

### III. SUFFICIENCY OF THE EVIDENCE

Silverio relies on the jury's failure to convict him of rape to argue that insufficient evidence supports his conviction of third degree child molestation. We disagree because sufficient evidence supports the conviction.

A. *Standard of Review*

When reviewing a sufficiency challenge to a conviction, we determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). A sufficiency challenge admits the truth of the State's evidence and accepts all reasonable inferences from it. *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).

B. *Sufficient Evidence of Child Molestation*

Silverio argues that insufficient evidence supports his conviction of third degree child molestation. Because the jury failed to reach a verdict on the third degree rape charge, Silverio reasons that the jury found that Silverio did not have sexual intercourse with MM. Aside from sexual intercourse, the evidence showed only that MM and Silverio kissed and removed their clothing. Silverio argues that kissing is not sexual contact, and therefore, the jury did not find any sexual contact to support the child molestation charge.

Third degree child molestation occurs when a defendant has sexual contact with a victim between the ages of fourteen and sixteen to whom he is not married, and where the defendant is

17

more than forty-eight months older than the victim. *See* RCW 9A.44.089. Third degree child rape bears the same elements, except that sexual intercourse, rather than mere sexual contact, must be proven. *See* RCW 9A.44.079. "Sexual contact" is defined in RCW 9A.44.010(2) as "any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." The Supreme Court has held that kissing, even when it leaves a "hickey" or "passion mark," is not sufficient sexual contact to support an indecent liberties conviction. *State v. R.P.*, 122 Wn. 2d 735, 736, 862 P.2d 127 (1993).

Contrary to Silverio's assertions, a jury's failure to convict him of child rape does not prove that they found that an element of child molestation was not proven. *State v. Goins*, 151 Wn.2d 728, 733, 92 P.3d 181 (2004). "Juries return inconsistent verdicts for various reasons, including mistake, compromise, and lenity." *Goins*, 151 Wn. 2d at 733. Instead of looking to whether the jury produced consistent verdicts, we consider only whether sufficient evidence supports each conviction. *Goins*, 151 Wn.2d at 733, *see also State v. Ng*, 110 Wn.2d 32, 48, 750 P.2d 632 (1988).

Here, sufficient evidence supports Silverio's conviction. *Green*, 94 Wn.2d at 221-22; *O'Neal*, 159 Wn.2d at 505. MM testified that she and Silverio kissed and removed some of their clothing, then had sexual intercourse. Regardless of the jury's failure to convict Silverio of third degree child rape, sufficient evidence existed to support his conviction of third degree child molestation, and Silverio's argument fails.

IV. LEGAL FINANCIAL OBLIGATIONS

Silverio argues that the trial court violated his federal constitutional right to counsel when it ordered him to pay the cost of his court-appointed attorney. Silverio also argues that RCW 10.01.160, allowing repayment of attorney fees, violates the Sixth Amendment. We disagree.

A.   *Standard of Review*

We review a claim of a denial of Sixth Amendment[12] rights de novo. *Jones*, 168 Wn.2d at 719. We also review de novo the interpretation and application of statutes, including the imposition of legal financial obligations (LFOs). *State v. Stone*, 165 Wn. App. 796, 806, 268 P.3d 226 (2012).

B.   *Issue Waived*

At sentencing, the trial court imposed a total of $2,135 in fees, including $1,135 in attorney fees. Silverio argues that the trial court violated his right to counsel when it imposed the attorney fees without first finding that he had the present or future ability to pay. Silverio waived this issue by failing to raise it below. *State v. Blazina*, 174 Wn. App. 906, 911, 301 P.3d 492, *review granted*, 178 Wn.2d 1010 (2013). We decline to allow the appellant to raise the issue for the first time on appeal. *Blazina*, 174 Wn. App. at 911.

C.   *RCW 10.01.160(3) Does Not Violate the Sixth Amendment*

Silverio argues that RCW 10.01.160(3), allowing repayment of attorney fees, violates his Sixth Amendment right to counsel. He argues that Washington courts erroneously allow a trial court to impose repayment without first making a determination of the defendant's actual future

---

[12] U.S. CONST. amend. VI.

ability to pay, which violates the Sixth Amendment by chilling the exercise of the right to counsel. *Fuller v. Oregon*, 417 U.S. 40, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974). We disagree.

Washington's repayment statute, RCW 10.01.160, does not violate the Sixth Amendment by chilling the right to counsel. *State v. Blank*, 131 Wn.2d 230, 239, 930 P.2d 1213 (1997); *State v. Curry*, 118 Wn.2d 911, 916, 829 P.2d 166 (1992); *State v. Smits*, 152 Wn. App. 514, 523-24, 216 P.3d 1097 (2009); *State v. Crook*, 146 Wn. App. 24, 27, 189 P.3d 811 (2008). As Silverio acknowledges, our Supreme Court has consistently held that *Fuller* does not require a court to find that the accused has the *actual* future ability to pay before ordering payment of court-appointed counsel fees. (Citing *Blank*, 131 Wn.2d at 239; *Curry*, 118 Wn.2d at 916; *Smits*, 152 Wn. App. at 523-24; *Crook*, 146 Wn. App. at 27). The court is required to find that the defendant will be able to pay, but RCW 10.01.160(3) does not require the trial court to enter formal, specific findings of the defendant's ability to pay when it initially imposes LFOs. Instead, when a defendant is unable to pay the cost of his LFOs, including attorney fees, Washington law permits him to petition for modification of the payments. RCW 10.01.160(4).

Because Washington courts have consistently held that *Fuller* does not require a judicial determination of the defendant's actual ability to pay before ordering repayment, Silverio's argument fails. Therefore, we hold that Silverio waived the issue of his ability to pay and decline to reconsider the Washington case law holding that RCW 10.01.160 does not violate the Sixth Amendment under *Fuller*.

No. 44704-5-II

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
WORSWICK, P.J.

We concur:

_____
LEE, J.

_____
SUTTON, J.

21