[No. 11693-6-II.   Division Two.   October 29, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN M. CHASE, ET AL, *Appellants.*

*Robert W. Huffhines, Jr.,* for appellants (appointed counsel for appeal).

*C.C. Bridgewater, Jr., Prosecuting Attorney,* and *Randy L. Furman, Deputy,* for respondent.

MORGAN, J.*—After a jury trial, Timothy and Brian Chase were convicted of burglary in the second degree. We affirm.

At 5:10 a.m. on October 4, 1987, police officers were dispatched in response to an intrusion alarm at Triple D Video, 4503 Ocean Beach Highway, Longview, Washington. As the first two officers arrived, they saw a man running south, away from the business, and they started to give chase. Just then a second man crashed through one of the store windows, from inside out. Predictably, this got the attention of the officers, and they chased him instead of the first man. Ultimately, the window crasher was apprehended and identified as Thomas Wacker.

In addition to the window which Wacker broke, the officers found a broken window in a bathroom at the rear of

---

*Judge J. Dean Morgan, a Judge of the Court of Appeals, was serving as a judge pro tempore of the court pursuant to CAR 21(c) at the time oral argument was heard on this matter.

the store. Near this window was parked a U-Haul truck. Videotapes and video cassette recorders belonging to the store were both in the truck and on the ground near it. Also in the truck was a motorcycle registered in Oregon to one Ken Coldeen.

When other officers arrived, they used a police dog to track the first man who had run south from the store. The dog led them to a boot, and ultimately a second boot was also found. The boots were warm on the inside, as if recently worn. They were Honcho brand, grey in color, size 12.

After finding the boots, the officers continued to track south of the store, in an area covered with blackberry bushes. At about 7:15 a.m., they found a second man hiding in the middle of a thicket. Instead of being bootless, however, he was wearing tennis shoes. He gave his name as Lee Parcurich, but was later identified as Timothy Chase.

At about 11:30 a.m., still on the same morning, a barefoot man walked into a nursery at 4117 Ocean Beach Highway. He was not wearing a shirt—it was stuffed in his pants—and he had scratches on him. He asked to call a taxi, and the proprietor let him use her phone for that purpose. When the taxi came, the man had the driver take him to a location near 1204 North First Street in Kelso.

By this time, the police were watching 1204 North First Street. When they had arrested Thomas Wacker just after 5 a.m., they had found in his pocket a traffic citation involving a 1955 Chevrolet station wagon with Colorado license plates. They had alerted other officers to watch for that car, and within a short time, the car had been located outside 1204 North First. Thus, when the man wearing no shoes and no shirt disembarked from the taxi, officers saw him go to the rear of the property at 1204 North First and enter a camper. When they contacted him, they observed that he had scratches on his upper body and that his pants were wet and muddy from the knees down. When they asked his name, he said it was Ken Coldeen, the same name

as on the registration for the motorcycle found in the U–Haul truck. Later, he was identified as Brian Chase.

On October 7, 1987, all three men were charged with second degree burglary. Within a day or so, Brian Chase was released, but on October 10 he was rearrested. At the time of the rearrest, he was wearing Honcho brand boots, grey in color, size 12. These were not the same boots as those which the police had found on October 4—the police were still holding those as evidence—but they were exactly the same brand, color and size.

Before trial, the police uncovered some additional information. The 1955 Chevrolet station wagon with Colorado plates had been impounded at a local tow yard on September 14, 1987, and released on October 2, 1987, to a woman named Kathy Glaze. She was accompanied at the time by Brian Chase, and they were driving a U–Haul truck. Also, the residence at 1204 North First had been rented by one Lee Parcurich, whom the landlord and neighbors identified as Timothy Chase. At about 11:30 p.m. on October 3, 1987, less than 6 hours before the alarm at the video store, a neighbor living near 1204 North First had seen a U–Haul vehicle parked outside that address.

Thomas Wacker pleaded guilty before trial, so trial involved only the Chase brothers. At trial, the State presented the above evidence through the testimony of 13 witnesses. Neither defendant chose to take the stand, but Timothy Chase called Thomas Wacker as a witness. Wacker testified as follows: On the night in question, he was driving a U–Haul truck with the Chase brothers as passengers. As he was driving by Triple D Video, he was struck by an impulse to burglarize it, so he stopped the truck. Brian Chase tried to talk him out of it, but he persisted. He broke the bathroom window, as well as the one he later jumped through, and he was the one who moved all the video equipment that was later found outside the store. He did not see the Chases after he first entered the building, and they did nothing to assist him.

The jury convicted both defendants, and the trial court imposed an exceptional sentence of 24 months on each. The standard range for each was 0 to 90 days.

## I

Defendants' first contention is that the trial court erred by denying the motion for continuance which they made after jury selection on the first day of trial. Brian made the motion on two grounds: (1) that his court appointed attorney was unprepared for trial, and (2) that he needed more time to retain an attorney of his choice. Timothy Chase joined in the motion on the second ground.

The trial court did not err. The decision on a motion for a continuance rests within the sound discretion of the trial court. *State v. Purdom,* 106 Wn.2d 745, 748, 725 P.2d 622 (1986); *State v. Williams,* 84 Wn.2d 853, 529 P.2d 1088 (1975). In this case, the trial court did not abuse its discretion.

The first ground did not support the motion because Brian made no showing that he was unprepared for trial, or that if he was, unpreparedness had come about despite due diligence. Although he had been incarcerated in an Oregon jail for some of the weeks preceding trial, there was no showing that he could not have communicated with his counsel by mail or other means. Additionally, his counsel, when questioned by the trial court, declined to assert that he was unprepared, instead pointing the court to Brian's wish to retain counsel of his choice as the main reason for granting a continuance.[1]

---

[1]The discussion between court and counsel regarding the motion for continuance was lengthy, but ended as follows:

"THE COURT: Well, what I hear you saying, you're ready to go to trial, that he wants to consult with another lawyer from another jurisdiction who represents him on a separate charge. That's what I hear him saying.

"Are you ready to go to trial, Mr. Morgan?

"MR. MORGAN: Well, Your Honor, I have to defer to my client's wishes in this matter.

"THE COURT: No. That's not what I asked you.

■ The second ground failed to support the motion because the defendants' request to retain counsel of their choice was not timely. Clearly, a defendant has the right to retain counsel of his choice, *Wheat v. United States,* 486 U.S. 153, 100 L. Ed. 2d 140, 108 S. Ct. 1692 (1988), and under particular circumstances he or she can be unlawfully deprived of the right by denial of a motion for continuance. *Cf. State v. Purdom,* 106 Wn.2d at 748 (denial of motion to continue deprived defendant of right to fair trial and due process). Like most rights, however, the right to retain counsel of one's own choice has limits, and one of which is that the right must be timely asserted. Although there are as yet no Washington cases on this particular limitation, we think an apt analogy can be found in cases dealing with the right of self–representation. With regard to that right, the Supreme Court has said:

> In order to invoke the unconditional self–representation right, an unequivocal assertion of that right must be made within a reasonable time before trial. *People v. Windham,* 19 Cal. 3d 121, 128–29, 560 P.2d 1187, 1191, 137 Cal. Rptr. 8, 12 (1977). If the request is made shortly before or as the trial is to begin, the existence of the right depends on the facts with a measure of discretion in the trial court. *State v. Fritz,* 21 Wn. App. 354, 361, 585 P.2d 173 (1978). In the absence of substantial reasons a late request should generally be denied, especially if the granting of such a request may result in delay of the trial.

*State v. Garcia,* 92 Wn.2d 647, 655–56, 600 P.2d 1010 (1979); *see also In re Richardson,* 100 Wn.2d 669, 674, 675 P.2d 209 (1983); *State v. Bebb,* 108 Wn.2d 515, 524, 740 P.2d 829 (1987).

Applying these concepts to the case at bar, we hold that it was within the trial court's discretion to refuse the defendants' untimely request to retain counsel of their

---

"MR. MORGAN: Well, like I said, before he keeps talking about what these other attorneys have to say, maybe they have information that would be valuable, maybe they had been able to better assist my client, better even able—

"THE COURT: Do you need time to call additional witnesses?

"Do you have any additional witnesses?

"MR. MORGAN: No.

"THE COURT: Denied."

choice. Timothy had been represented by court appointed counsel since the inception of the case. He had not retained a private attorney, and at the time of the motion he made no showing that he had the means to do so. Brian alleged that he had in fact retained an attorney, a Mr. Sample from Colorado, but Sample had not appeared in the case even though it had been pending for 7 weeks. Moreover, he was not a Washington attorney, and as far as the record shows, he had taken no action to associate Washington counsel.

## II

The defendants contend that the trial court erred by admitting the false names which they gave when first contacted by the police. We disagree.

■ Evidence that Brian gave a false name was properly admitted. Evidence is relevant if it has "any tendency" to prove or disprove a fact of consequence to the action. ER 401. In this case, the fact that Brian gave the name Ken Coldeen was relevant for three purposes, two of which were proper and one of which was not. First, it had a tendency to connect Brian to the scene of the crime, for the name given was the same as that on the registration papers for the motorcycle that had been found in the truck. ER 401. Second, it tended to show consciousness of guilt, and thus to further inferences of identity and criminal intent. *State v. Allen*, 57 Wn. App. 134, 143–44, 788 P.2d 1084 (1990); 5A K. Tegland, Wash. Prac., *Evidence* § 85, at 244 (3d ed. 1989). Third, it had a tendency to show that Brian, being one who would lie, was of bad character and thus more likely to have committed the crime charged. This last tendency was improper due to ER 404(a).

■ The effect of evidence properly used is called probative value. The effect of evidence improperly used is called unfair prejudice. When faced with evidence which can be used both properly and improperly, the task of the trial court is to balance probative value against unfair prejudice, and to exclude if the former is substantially outweighed by the latter. ER 403. How this balance should be struck is

necessarily a matter addressed to the discretion of the trial court, *State v. Rupe,* 108 Wn.2d 734, 757, 734 P.2d 210, *cert. denied,* 486 U.S. 1061 (1987); *State v. Harris,* 106 Wn.2d 784, 791, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940 (1987), and as to Brian there was no abuse of discretion.

▉▉ Timothy waived any error in admitting his use of the name Parcurich, because he made no objection at trial. Error, if any, would have been due to a violation of ER 403 and ER 404(b). Such error is not of constitutional magnitude, *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984); *State v. Smith,* 106 Wn.2d 772, 780, 725 P.2d 951 (1986), and cannot be raised for the first time on appeal. RAP 2.5(a).

Even if Timothy had not waived error, none was present. The evidence tended to connect Timothy to the crime by showing that he had rented the apartment to which Brian had returned, and outside of which a U–Haul truck had been seen a few hours before the crime. It also tended to show consciousness of guilt and bad character, in the same way as for Brian. The first two purposes were proper, while the third was improper. The trial court had the duty to balance the first two against the third, and to exclude if the probative value of the first two was substantially outweighed by unfair prejudice resulting from the third. It did that, and its decision to admit was not error.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ALEXANDER, C.J., and PETRICH, J., concur.