# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,      )
                          )      No. 68459-1-I
        Respondent,       )
                          )      DIVISION ONE
    v.                    )
                          )      UNPUBLISHED OPINION
KOREY TAYLOR,             )
                          )
        Appellant.        )      FILED: June 24, 2013
                          )

APPELWICK, J. — Taylor argues that the trial court violated his right to counsel of choice when it denied his day-of-trial motion to continue so he could retain private counsel. The trial court did not abuse its discretion, because it properly balanced the defendant's right to counsel of his choice against the public interest in prompt and efficient administration of justice. We affirm.

## FACTS

Richard Werts owned a house in Edmonds, Washington. Korey Taylor lived there with Jennifer Ackaret, Werts's stepdaughter. On October 4, 2010, Werts started preparing the ground to pour a cement slab in the yard of that house so he could keep a motor home parked there. Taylor told Werts not to put the slab in that location, because Taylor was concerned the weight would create a leak in the water line running under the area. The discussion escalated into an argument that did not become physical. The argument ended when Werts left the property with his stepson.

The next day, Werts returned to the property and started working on the project again while Taylor and Ackaret were away. When Taylor and Ackaret returned home, Werts was still in the yard holding a rake. He and Taylor began to argue again, the

argument escalated, and the rake struck Werts and he was left bleeding from his head.[1] Ackaret took Werts to Edmonds Hospital, and an ambulance transferred him to Harborview Medical Center. Detective Shane Hawley and Officer J. Robinson of the Edmonds Police Department responded to an assault report and spoke with Werts at Harborview. While returning to Edmonds, they were dispatched to the house where Werts was injured. There, the police interviewed Taylor and Ackaret, taking written statements from them. Ackaret showed the rake to the police, who photographed it and took it into evidence.

The State charged Korey Taylor with third degree assault in connection with the injury. Taylor's trial began January 23, 2012. On the day of trial, the State added a second degree assault charge and deadly weapons enhancements to both charges. When the proceedings started, Taylor asked the court to allow him to substitute a private attorney for his court appointed counsel. He said family members were previously unwilling to get involved because the victim was also a family member, but they agreed the day before trial to help pay for private counsel because of the seriousness of the charges. Taylor also said that he wanted to be confident going into trial, but that appointed counsel told him that he was going to lose. After hearing from Taylor, defense counsel, and the prosecutor, the court refused to delay trial and denied Taylor's motion.

A jury found Taylor guilty on both charges and returned special verdicts that he was armed with a deadly weapon when he committed the crimes. After the verdict, the

---

[1] The witness accounts differ as to how Werts' injury was caused. We discuss those accounts below in our analysis of Taylor's statement of additional grounds.

2

court dismissed the third degree assault conviction and sentenced Taylor on the second degree assault with a deadly weapon enhancement. Taylor appeals. He also filed a statement of additional grounds.

## DISCUSSION

### I. Right to Retained Counsel of Choice

Taylor argues that the trial court violated his constitutional right to retained counsel of his choice when it denied his request to substitute his appointed counsel with retained counsel. He asks that the judgment be reversed, because the trial court inappropriately focused solely on the competence of counsel and failed to make an explicit finding that granting the request would cause undue delay.

We apply the abuse of discretion standard when reviewing a trial court's decision regarding a defendant's motion to substitute retained counsel. State v. Price, 126 Wn. App. 617, 632, 109 P.3d 27 (2005). While defendants have a Sixth Amendment right to choose their retained counsel, it is a qualified right. State v. Roth, 75 Wn. App. 808, 824, 881 P.2d 268 (1994). When a defendant asserts the right to retain counsel of choice in such a way that would delay trial, courts must balance the defendant's interest in exercising this right against the public interest in the prompt and efficient administration of justice. Id. at 824-25. We uphold a trial court's decision on such a motion unless the decision is an unreasoning and arbitrary insistence on speed and efficiency in the face of a justifiable request for delay. Id. at 824.

Appellate courts have articulated a host of factors for determining whether a trial court's decision unjustifiably interferes with the defendant's right to retain counsel of choice. Id. at 825; 3 Wayne R. LaFave et al., Criminal Procedure § 11.4(c) at 718-720

3

(3d ed. 2007). The court's analysis of the following factors supports its decision. First, Taylor made his request on the morning that trial was set to begin. See State v. Chase, 59 Wn. App. 501, 506-07, 799 P.2d 272 (1990) (requests to retain counsel shortly before or at trial should generally be denied in the absence of substantial reasons to the contrary). Second, the trial court determined that Taylor had not yet retained, or even identified, substitute counsel, and the new attorney would have needed time to prepare for trial. See Id. at 507 (no abuse of discretion when trial court denied motion to continue in order to retain counsel when defendant had not yet retained counsel). Third, the trial court considered whether Taylor had some legitimate cause for dissatisfaction with counsel and found none. See Roth, 75 Wn. App. at 825. Fourth, defense counsel repeatedly indicated that he was prepared to go to trial that day. See id. Finally, the court's inquiry revealed no indication that the denial of Taylor's motion would materially or substantially prejudice his case, and Taylor does not claim on appeal that the court's ruling prejudiced him in any way. See id. at 825-26

Taylor argues that the trial court violated his right to counsel of choice because "there was no finding that Mr. Taylor's request would result in an unreasonable delay in the start of trial." The court did not utter the words "undue" or "significant delay."[2] However, the record shows quite clearly that the trial court carefully considered several factors bearing on the significance and length of the delay: Taylor had not identified

---

[2] Taylor cites no authority, and we found none, that would render the court's decision erroneous because it did not utter those specific words when it nonetheless made a reasoned decision that was not arbitrary. Failure to cite authority constitutes a concession that the argument lacks merit. State v. McNeair, 88 Wn. App. 331, 340, 944 P.2d 1099 (1997).

replacement counsel; a continuance would have pushed the trial past the speedy trial date; and a continuance would have caused scheduling difficulty for several witnesses.

Taylor also argues that the trial court improperly relied solely on the effectiveness of current counsel when ruling on Taylor's motion. As Taylor correctly points out, a defendant's right to choose one's retained counsel is independent of the right to competent counsel. See United States v. Gonzalez-Lopez, 548 U.S. 140, 148, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006). The right to competent counsel comes in part from the Sixth Amendment's purpose of ensuring a fair trial. Id. at 146. In contrast, the right to select counsel of one's choice is "the root meaning of the constitutional guarantee." Id. at 147-48. The right to counsel of choice "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." Id. at 146. "Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation." Id. at 148. The trial court would have been wrong if it denied Taylor's request because he had not shown prejudice within the meaning of Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). However, the trial court did not do this. The trial court noted that there was no evidence of a failure to cooperate, disregard of counsel's advice, conflict of interest, or personal antagonism. But, it also based its ruling on the fact that no substitute counsel was available and ready to proceed. While the court considered factors which it might also have considered if it was looking at an ineffective assistance of counsel question, it did not indicate that a finding of ineffective assistance of counsel was a prerequisite to granting Taylor's request.

The trial court properly balanced Taylor's right to counsel of his choice against the public interest in prompt and efficient administration of justice.

II. Statement of Additional Grounds

Taylor raises two issues in a statement of additional grounds. The first is the same issue we discuss above. We need not consider it further. Second, he alleges "tampering of evidence/conflict of interest." It is unreviewable under RAP 10.10(c), because he fails to adequately inform the court of the nature and occurrence of the alleged errors.

Taylor argues four other issues in a supplemental statement of additional grounds. First, he argues that the State failed to preserve exculpatory evidence. Second, he claims that the State did not present sufficient evidence to support his conviction. Third, he says he received ineffective assistance of counsel. His final argument is that the State was not entitled to charge him with both second and third degree assault. Each of his arguments fails.

To comport with due process, the prosecution has a duty to disclose material exculpatory evidence and a corresponding duty to preserve evidence. State v. Wittenbarger, 124 Wn.2d 467, 475, 880 P.2d 517 (1994). The central inquiry in a challenge alleging the State failed to preserve evidence is whether the lost evidence was "'materially exculpatory'" or merely "'potentially useful.'" State v. Burden, 104 Wn. App. 507, 509, 17 P.3d 1211 (2001). Evidence is materially exculpatory if (1) its exculpatory value was apparent before the evidence was lost, and (2) the nature of the evidence leaves the defendant unable to obtain comparable evidence by other reasonably available means. Wittenbarger, 124 Wn.2d at 475.

Taylor asserts:

> The police showed up at the crime scene at least two hours after the alleged crime had occurred, took statements from the defendant and other witnesses. They removed the weapon (rake) without taking notes of the rakes location. No photos of the crime scene [were] taken; there [was] no form of forensic evidence collected in this criminal case.

He further asserts:

> The defendant truly believes that his case would depend on forensic evidence collected at the scene of the crime; location of the rake, indentation in the ground [where] the rake made contact, point of [DNA (deoxyribonucleic acid)] contact with the rake, finger print evidence of the rake, blood splatter on clothing or ground, blood droppings.

He claims that, in sum, the police failed to follow proper procedures. But, because this issue was not raised below, the facts that he alleges are not fully developed in the record, and some of them are directly contradicted by the existing record. For instance, a police officer testified that pictures were taken at the crime scene. There was no testimony whatsoever about proper police procedures in this type of case. Issues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a statement of additional grounds. State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008).

Moreover, Taylor has failed to show that the type of evidence police officers allegedly failed to preserve is materially exculpatory. He identifies evidence that could have possibly assisted his claim that Werts's injuries were caused by falling on the rake. But, that theory did not arise until trial. At the crime scene, the police had no reason to suspect that was what happened. Taylor himself told police officers that Werts swung the rake at him, that Taylor blocked it, and that the rake then bounced back and hit

7

Werts in the head. The evidence's exculpatory value, if any, was not apparent at the time of the initial investigation.

Taylor next argues that the State never established that he actually possessed the rake, and that there is thus insufficient evidence to support a conviction for second degree assault with a deadly weapon. Evidence is sufficient to support a conviction if, viewed in the light most favorable to the prosecution, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. State v. Moles, 130 Wn. App. 461, 465, 123 P.3d 132 (2005). Credibility determinations are within the exclusive province of the jury. See, e.g., State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), abrogated in part on other grounds by Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

There were essentially three versions of events presented at trial. First, witnesses and Taylor himself initially told police that Werts swung the rake at Taylor, Taylor blocked it, and it rebounded and hit Werts. Second, at trial Taylor and witnesses testified that Werts swung the rake at Taylor, Taylor blocked it, and then Werts fell and landed on the rake. Third, Werts testified that, as he approached Taylor with the rake, Taylor grabbed the rake and eventually established control of it. Werts was pulled forward, let go, and then was hit with the rake. A doctor testified that Werts's injury would have required a significant amount of force and would have been unlikely to result from being struck with a deflected rake blow. Werts's testimony together with the

8

doctor's testimony constitutes sufficient evidence for a rational trier of fact to conclude that Taylor had control of the rake and struck Werts.

Taylor further argues that he received ineffective assistance of counsel. To establish ineffective assistance of counsel, a defendant must prove that the attorney's performance fell below an objective standard of reasonableness and that the deficiency prejudiced the defendant. Strickland, 466 U.S. at 687. The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of a legitimate strategic or tactical reason for the challenged conduct. State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). Prejudice is present if there is a reasonable probability that, but for counsel's error, the result would have been different. Id. at 334-35.

Taylor argues that defense counsel was ineffective for three reasons. The first reason Taylor asserts is that defense counsel failed to challenge the failure to properly preserve the crime scene, and failed to conduct an independent investigation. Second, Taylor argues that defense counsel did not point out to the jury that there was no evidence such as fingerprints or DNA evidence. Third, Taylor argues that defense counsel failed to retain any expert witnesses to counter the State's expert witnesses. But, the police did not fail to collect or preserve evidence with exculpatory value that was apparent at the time, so defense counsel was not deficient for failing to raise that argument. Taylor does not identify what additional "investigatory evidence" defense counsel could or should have presented. The decision to not point out the lack of DNA evidence or fingerprint evidence is a particularly understandable tactical decision. All of the witnesses, including Taylor, acknowledged that Taylor touched the rake and that

Werts was injured by it. Finally, we are unable to review his third argument because it does not identify the nature and occurrence of the alleged error. RAP 10.10(c). He offers no explanation as to which witnesses' testimony could have been rebutted, or what aspect of that testimony could have been rebutted. Counsel was not deficient.

Taylor lastly argues that the State improperly told the jury that it could find Taylor guilty of either assault in the second degree or assault in the third degree "because they were essentially the same charge." But, nothing prevents the State from charging a defendant with lesser included offenses. The trial court laid to rest any double jeopardy concerns when it dismissed the conviction for assault in the third degree.

We affirm.

Appelwick, J.

WE CONCUR: