IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31965-2-III |
| Respondent, | ) | |
| v. | ) | |
| ANAUM DIAZ GUZMAN, | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |

SIDDOWAY, C.J. — Anaum Diaz Guzman appeals his convictions entered after he was retried on rape charges that had resulted in a hung jury and mistrial when he was first tried for the crimes. He assigns error to what he contends was a constitutionally flawed *Petrich*[1] instruction and argues that his trial lawyer provided ineffective representation of counsel. We find no error or ineffective representation and affirm.

FACTS AND PROCEDURAL BACKGROUND

Anaum Diaz Guzman was married at all times relevant to the crimes charged in this matter to the eldest daughter of a family whom we will refer to pseudonymously as

---

[1] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988), *abrogated in part on other grounds by In re Pers. Restraint of Stockwell*, 179 Wn.2d 588, 316 P.3d 1007 (2014).

the Therouxs.[2] His wife had two younger sisters, D., who was the second oldest girl in

the family, and R., who was the youngest. After D. and R. reported to Mr. and Mrs.

Theroux that they had been the victims of sexual assault by their brother-in-law, Mr. Diaz

Guzman was tried in 2012 on a charge of assault in the fourth degree with sexual

motivation against D., and with rape of a child in the first degree and rape of a child in

the second degree of R. The first degree rape charge was based on rape alleged to have

occurred before R. was 12 years of age, and the second degree rape charge was based on

a rape alleged to have occurred after R.'s twelfth birthday.

When the charges were first tried in 2012, the jury found Mr. Diaz Guzman not

guilty of the fourth degree assault charge involving D. It was unable to reach verdicts on

the rape counts involving R. however, and the trial court declared a mistrial. This appeal

is from retrial of the charges of first and second degree rape of R.

At this second trial, R. testified she had been sexually abused by Mr. Diaz

Guzman for years, testifying in both generalities and specifics to the type of abuse she

experienced. She testified to multiple acts that could constitute rape during the charging

period for first degree rape (July 26, 2001 through July 25, 2005, when R. was ages 8

through 11), telling the jury that on two separate occasions when Mr. Diaz Guzman had

---

[2] By standing order, we use initials or pseudonyms to protect the privacy interests
of child witnesses or victims.

2

taken her fishing, he had digitally penetrated her. She testified that she was likely 10 or 11 years old the first time it happened, and that the second occurrence took place a few months later.

In support of the charge for rape of a child in the second degree (during the charging period July 26, 2005 to July 25, 2007, when R. was ages 12 and 13), R. testified to recurring molestation when she was 12 or 13 years old. Asked by the State to describe a specific incident, she testified that while staying over at her sister's and Mr. Diaz Guzman's home one night, Mr. Diaz Guzman came into the bedroom where she was sleeping, late at night, and digitally penetrated her. Throughout the abuse, she testified that Mr. Diaz Guzman would kiss R. and tell her that he "love[d]" her and later that he wanted to "make love" to her. Report of Proceedings (RP) (Mar. 13-15, 2015) at 168, 173.

The State also presented evidence of "consciousness of guilt" on Mr. Diaz Guzman's part by calling Mr. Theroux to testify to Mr. Diaz Guzman's behavior after learning that D. had posed general and not-yet accusatory questions to her parents about molestation. The State had presented evidence that in December 2010, D. approached her parents and asked what one should do if they knew someone was being sexually abused.

The State questioned Mr. Theroux about a lunchtime conversation he had had with Mr. Diaz Guzman a short time later:

3

[Prosecutor]: What was the mood of the defendant before you went for lunch?

[Mr. Theroux]: Very good. Very happy. Talkative.

. . . .

[Prosecutor]: On the way there, did the two of you discuss anything?

[Mr. Theroux]: . . . I shared with [Mr. Diaz Guzman] this visit that [D.] had had with us a couple nights before when she brought up this subject of what would one do if one knew someone was being abused.

[Prosecutor]: When you spoke to the defendant about that, did he ask you any questions about it?

[Mr. Theroux]: No.

[Prosecutor]: Did he make any remarks?

[Mr. Theroux]: No.

[Prosecutor]: What was his demeanor like when you were relaying this conversation?

[Mr. Theroux]: Well, you know, I was doing most of the talking, but I at one point noticed he was looking at the floorboards.

. . . .

[Prosecutor]: Did—what was the nature of the conversation between the two of you during lunch?

[Mr. Theroux]: You know, it was strained, I think, awkward, or silent, mostly we didn't. He seemed very quiet.

. . . .

[Prosecutor]: Did he make conversation on your way back to Ephrata?

[Mr. Theroux]: No.

[Prosecutor]: How did the rest of the afternoon go?

[Mr. Theroux]: Well, by this time I was tuned in to that we were— that something was troubling him, and but toward quitting time, but toward quitting time, I think we were getting close to our normal chatter back and forth.

RP (Mar. 13-15, 2013) at 116-18. It was a few days after Mr. Theroux's lunch with Mr.

Diaz Guzman that R. revealed to her parents that Mr. Diaz Guzman had been molesting

her for years.

4

Mr. Diaz Guzman testified on his own behalf, as he had in the first trial, and denied all allegations of sexual abuse of R.

During closing arguments, the State reminded the jury of all of the alleged acts of molestation recounted by R. without identifying a particular act it was relying on for either charge. The jury found Mr. Diaz Guzman guilty of both counts. He appeals.

## ANALYSIS

Mr. Diaz Guzman assigns error to what he contends was a constitutionally flawed *Petrich* instruction and argues that his trial lawyer provided ineffective representation in several respects. We address the assignments of error in turn.

### I. Jury Unanimity Instruction

Because R. testified to several acts during both charging periods, the trial court gave a "jury unanimity," or *Petrich* instruction. For the first time on appeal, Mr. Diaz Guzman assigns error to the instruction given, arguing that jurors could have understood the instruction to mean that as long as they unanimously agreed that he had committed a rape in the first charging period based on the same act, they could find him guilty of both counts; by the same token, if they unanimously agreed that he had committed a rape in the second charging period based on the same act, they could find him guilty of both counts. The State responds that read in the context of all of the jury instructions, there was no possibility of confusion. We agree with the State.

"In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed." *Petrich*, 101 Wn.2d at 569. "When the evidence indicates that several distinct criminal acts have been committed, but defendant is charged with only one count of criminal conduct, jury unanimity must be protected." *Id.* at 572. To adequately protect jury unanimity, either the State must elect the specific act it is relying on to constitute the crime charged, or alternatively the court must instruct the jury that all 12 members must unanimously agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Id.*; *see also State v. Crane*, 116 Wn.2d 315, 325, 804 P.2d 10 (1991). "[F]ailure to follow one of these options is error, violative of a defendant's state constitutional right to a unanimous jury verdict and United States constitutional right to a jury trial." *Kitchen*, 110 Wn.2d at 409.

Because jury unanimity is a constitutional right, a manifest error may be raised for the first time on appeal. RAP 2.5(a)(3); *Crane*, 116 Wn.2d at 325. A conviction obtained without proper jury unanimity will be reviewed under the constitutional harmless error analysis. "[T]he error will be deemed harmless only if no rational trier of fact could have entertained a reasonable doubt that each incident established the crime beyond a reasonable doubt." *Kitchen*, 110 Wn.2d at 406.

Review of a challenged jury instruction is de novo. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010). The instruction will be reviewed

6

within the context of the jury instructions as a whole. *Id.*; *see also State v. Cordero*, 170

Wn. App. 351, 370, 284 P.3d 773, (2012) ("The jury instructions as a whole must

correctly apprise the jury of the law and enable a defendant to argue his defense theory.")

(citing *State v. Rice*, 102 Wn.2d 120, 123, 683 P.2d 199 (1984)).

The challenged instruction reads:

### JURY UNANIMITY

The State alleges that, on more than one occasion, the defendant committed acts which could be found by the jury to constitute an element of a crime charged.

To convict the defendant of rape of a child in the first degree, as charged in Count 1, at least one particular act of sexual intercourse must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the [sic] all the alleged acts have been proved.

To convict the defendant of rape of a child in the second degree, as charged in Count 2, at least one particular act of sexual intercourse must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the [sic] all the alleged acts have been proved.

Clerk's Papers (CP) at 152 (instruction 7). The instruction would have been clearer had

the instruction stated, "To convict the defendant of rape of a child in the first degree, as

charged in Count 1, at least one particular act of sexual intercourse *taking place between*

*July 26, 2001 and July 25, 2005,* must be proved beyond a reasonable doubt, and you

must unanimously agree as to which act has been proved," and "To convict the defendant

of rape of a child in the second degree, as charged in Count 2, at least one particular act

of sexual intercourse *taking place between July 26, 2005 and July 25, 2007,* must be

7

proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved."

While Mr. Diaz Guzman has identified a theoretically possible reading of the jury unanimity instruction that, read in isolation, could lead to error, it is unlikely that jurors, exercising their common sense, would have concluded that a unanimous finding of an act of rape in one charging period would support a guilty verdict on a count involving a different charging period. The implausibility of Mr. Diaz Guzman's reading of instruction 7 is even clearer when we consider other instructions given by the court.

The court's instructions made clear the difference between the two crimes charged, and the fact that they involved mutually exclusive age ranges for R. and mutually exclusive charging periods. Instruction 4 provided:

### RAPE OF A CHILD

A person commits the crime of rape of a child when he or she has sexual intercourse with a person deemed at law to be too young to consent, and not married to the accused. The age of the younger person and the difference in the parties' ages determines different degrees of rape of a child. When the younger person is less than 12 years old, and the older person is at least twenty-four months older, the crime occurs in the first degree. When the younger person is at least twelve and less than 14 years old, and the older person is at least 36 months older, the crime occurs in the second degree.

CP at 149.

8

The court gave the following instruction addressing the jury's duty in deciding the separate charges; jurors would have to ignore the highlighted language of this instruction in order to construe instruction 7 in the manner suggested by Mr. Diaz Guzman:

CHARGES AND BURDEN OF PROOF

The defendant is charged with rape of a child in the first degree in Count 1, and with rape of a child in the second degree in Count 2. *You must decide each charge separately, as if it were a separate trial. Your verdict on one count should not control your verdict on the other count.*
Every crime consists of several parts, called "elements." The elements of each count will be specified for you later in these instructions. The defendant's plea of not guilty puts in issue, to be decided by the jury, each element of each crime charged. The State is the plaintiff and has the burden of proving each of these elements beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists.

CP at 148 (instruction 3) (emphasis added).

The key "to convict" instructions also clearly required a finding of sexual intercourse during the relevant charging period in order to find Mr. Diaz Guzman guilty of each count. Again, jurors would have to ignore the highlighted language in the following two instructions given by the court in order to construe instruction 7 in the manner suggested by Mr. Diaz Guzman:

COUNT 1: RAPE OF A CHILD IN THE FIRST DEGREE

To convict the defendant of rape of a child in the first degree, as charged, the State must prove each of the following elements of the crime beyond a reasonable doubt:
1. *That on or between July 26, 2001 and July 25, 2005, the defendant had sexual intercourse with [R.];*

9

2.    *That [R.] was at the time of such intercourse less than twelve years old and not married to the defendant;*

3.    That [R.] is at least twenty-four months younger than the defendant; and

4.    That the act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 1.

On the other hand, if you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count 1.

CP at 150 (instruction 5) (emphasis added).

### COUNT 2: RAPE OF A CHILD IN THE SECOND DEGREE

To convict the defendant of rape of a child in the second degree as charged in Count 2, the State must prove each of the following elements of the crime beyond a reasonable doubt:

1.    *That on or between July 26, 2005 and July 25, 2007, the defendant had sexual intercourse with [R.];*

2.    *That [R.] was at least twelve years old but was less than fourteen years old at the time of the sexual intercourse and was not married to the defendant;*

3.    That [R.] is at least thirty-six months younger than the defendant; and

4.    That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 2.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty as to Count 2.

CP at 151 (instruction 6) (emphasis added).

Read as a whole—as they must be—the court's instructions to the jury made clear

that the jury needed to unanimously agree on one particular act of sexual intercourse

10

within the charging period for the respective count. In the context of the other jury instructions, no reasonable juror would have read the *Petrich* instruction in the manner suggested by Mr. Diaz Guzman.

*II. Ineffective Assistance of Counsel*

Mr. Diaz Guzman next argues that he received ineffective assistance of counsel, pointing to the following allegedly deficient performance:

- A failure to object when the State referred in opening testimony and later presented evidence of statements D. had made to Mr. and Ms. Theroux, which were inadmissible and prejudicial hearsay;

- A failure to object to Ms. Theroux's testimony to a conversation with D. and R. in which, in violation of an in limine order, she revealed that D. also claimed to be a victim of sexual assault; and

- A failure to effectively impeach R. with inconsistent statements she had made about Mr. Diaz Guzman's actions.

"Washington applies the two-part *Strickland* test in determining whether a defendant had constitutionally sufficient representation." *State v. Tilton*, 149 Wn.2d 775, 783, 72 P.3d 735 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). A defendant must show both that he received deficient representation and that he suffered some prejudice as a result. *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995) (citing *Strickland*, 466 U.S. at 686-89).

Deficient performance is determined using an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705-06, 940 P.2d 1239 (1997). We

11

presume that counsel's representation was effective, and the defendant has the burden to show that, based on the record, there are no "'legitimate strategic or tactical reasons'" for the challenged conduct. *State v. Emery*, 174 Wn.2d 741, 755, 278 P.3d 653 (2012) (quoting *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995)).

Prejudice will result if "'counsel's errors were so serious as to deprive the defendant of a fair trial.'" *Mierz*, 127 Wn.2d at 471 (quoting *Strickland*, 466 U.S. at 687). "This showing is made when there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *Id.*

### Evidence of D's query about "what to do"

During its opening statement, the State explained to the jury that they were "going to hear" evidence that D. approached her parents and asked what to do if she knew someone was being molested. RP (Mar. 13-15, 2013) at 62. It went on to explain that a few days later Mr. Diaz Guzman and Mr. Theroux had lunch together, and that during that lunch Mr. Theroux told the defendant that "it's really hard being a parent. [D.] came to us last night, she wanted to talk about, you know, what if you knew somebody was being molested, what would you do." *Id.* at 63. It told the jury, "[Mr. Theroux] will tell you that when he relayed this conversation to the defendant, the defendant got very quiet . . . which was out of character for him." *Id.* In thereafter presenting its witnesses, the State elicited Mr. Theroux's testimony about his conversation with Mr. Diaz Guzman and Mr. Diaz Guzman's behavior in apparent response.

12

Mr. Diaz Guzman argues that his trial lawyer should have objected to evidence that D. approached her parents with a question about what to do about molestation and evidence that Mr. Theroux repeated D.'s concerns to him. He argues that the evidence was inadmissible hearsay—although when his trial lawyer *did* object to Ms. Theroux's testimony about the same conversation with D., his hearsay objection was overruled. The State points out that D.'s statement to her parents was not being offered for its truth.

On appeal, Mr. Diaz Guzman focuses his challenge on his trial lawyer's failure to object to the evidence as irrelevant under ER 401 and unduly prejudicial under ER 403. He argues that because he had moved in limine to exclude any evidence of D.'s allegations that she was sexually assaulted, the jury did not have a complete context for D.'s statement; they might misconstrue it as suggesting that D. was aware of R.'s allegations rather than making an oblique inquiry about her own situation.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. The general rule is "[a]ll relevant evidence is admissible." ER 402. Relevant evidence will not be admissible if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." ER 403. The process of weighing probative value against prejudicial effect "is necessarily a matter addressed to the discretion of the trial court." *State v. Chase*, 59 Wn. App. 501, 507-08, 799 P.2d 272 (1990).

13

To establish ineffective assistance of counsel for failing to object, a defendant must "show that the failure to object fell below prevailing professional norms, that the objection would have been sustained, and that the result of the trial would have been different if the evidence had not been admitted." *State v. Sexsmith*, 138 Wn. App. 497, 509, 157 P.3d 901 (2007).

The problem with Mr. Diaz Guzman's argument is that the principal relevance of the line of questioning, and the reason the evidence was offered by the State, was to point to evidence of Mr. Diaz Guzman's reaction to the report that D. had made the inquiry. The reaction, which the State argued reflected guilty knowledge, was relevant regardless of the circumstances or state of mind that prompted D. to make the inquiry.

A witness may testify about a defendant's reaction if it is prefaced by a proper foundation, such as personal observations of the defendant's conduct that are factually recounted to the jury. *State v. Day*, 51 Wn. App. 544, 552, 754 P.2d 1021 (1988). And evidence of consciousness of guilt is generally admissible if relevant. *See, e.g., State v. Allen*, 57 Wn. App. 134, 143, 788 P.2d 1084 (1990) (where the court found that giving an officer a false name indicated guilty knowledge and was therefore relevant evidence). The State expected to be able to offer the evidence (it had been admitted in the first trial[3])

---

[3] At the first trial in February 2012, trial counsel for Mr. Diaz Guzman objected to this testimony on the grounds that it was "[Mr. Theroux's] determination of [Mr. Diaz Guzman's] mental state." RP (Feb. 23-28, 2012) at 398. The court overruled the objection, explaining that the testimony was a description of Mr. Diaz Guzman's

14

and a statement concerning a "witness's expected testimony" is permissible during opening remarks. *State v. Thorgerson*, 172 Wn.2d 438, 444, 258 P.3d 43 (2011) (citing *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

Mr. Diaz Guzman is unable to demonstrate that an objection under ER 401 or 403 would have been sustained; accordingly, he has not shown that his trial lawyer's failure to object was deficient performance. If one of the two prongs of the *Strickland* test is absent, this court need not inquire further. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

### *Ms. Theroux's testimony suggesting that D. also claimed to be a victim of sexual assault*

Mr. Diaz Guzman next argues he received ineffective assistance of counsel when his lawyer failed to object or move for a new trial when Ms. Theroux suggested in her testimony that D. had been a victim of molestation as well. He argues this was in violation of a "motion" in limine. Br. of Appellant at 4. Our record includes a motion in limine to exclude testimony about D.'s allegations, although it includes no order. Nonetheless, the State concedes that prejudicial testimony about D.'s allegations, of which Mr. Diaz Guzman was acquitted, would be problematic. It argues, however, that the testimony of Ms. Theroux complained of was fleeting, and not prejudicial.

At issue is the following testimony by Ms. Theroux:

---

demeanor as it appeared to Mr. Theroux *Id.*

[Prosecutor]: Before lunch, [Ms. Theroux], we had talked about when [R.] had come to talk to you to tell you about these allegations. When she came to you, could you relate to us, not what she said, but what you did in response to what she said.

[Ms. Theroux]: This is when [R.] came and said that she had something to tell us?

[Prosecutor]: Yes.

[Ms. Theroux]: Yes. So later that evening, when we were home, we went to [D.'s] bedroom, and there the girls were sitting on the floor, and they said that—

[Prosecutor]: Just—

[Ms. Theroux]: It was apparent that they had something—go ahead.

[Prosecutor]: Okay. Go ahead.

[Ms. Theroux]: It was apparent that they had something very important to say to us. And so it was revealed that—

[DEFENSE COUNSEL]: I'll object to the narrative.

THE COURT: Right. You're not permitted to relate what you were told.

[Ms. Theroux]: Okay.

THE COURT: That's why [the prosecutor] asked you not what you were told, but what you did in response to what you were told.

[Ms. Theroux]: I asked them questions to determine the extent of the molestation, and—

BY [THE PROSECUTOR]:

[Prosecutor]: Okay. How long did you talk—how long did this talk go on for?

[Ms. Theroux]: Two or three hours.

[Prosecutor]: When you were speaking to the girls, what was [R.'s] demeanor like?

[Ms. Theroux]: She was scared and shaky, quiet, determined.

[Prosecutor]: And as a result of what you learned, what did you do?

[Ms. Theroux]: I started reassuring them that they—that there was hope, that we—that they weren't bad girls, that— that they were worth— were worthy.

RP (Mar. 13-15, 2013) at 85-86.

16

The concern is with Ms. Theroux's continuing references to "them" and "they." Most of those references do not imply that D. was a victim, but only reflect the fact that Ms. Theroux was speaking with both girls at once. Two statements are problematic: "I started reassuring *them* that *they*—that there was hope, that we—that *they* weren't bad girls, that—that *they* were worth—were worthy," and "I asked *them* questions to determine the extent of the molestation." RP (Mar. 13-15, 2013) at 85-86 (emphasis added).

It is commonplace in trials for some witnesses, at some points, to misspeak or to speak imprecisely. Lawyers sometimes misspeak or speak imprecisely when in argument. When isolated misstatements are made in the course of a trial, jurors can ordinarily be trusted to recognize them as mistakes and ignore them. Here, of course, Ms. Theroux probably *wasn't* misspeaking, she was probably just forgetting that D.'s allegations should not be mentioned. But the jurors would reasonably have assumed—if they heeded the "thems" and "theys" at all—that she was not implying that D. had been molested. The problematic testimony consisted of two statements appearing in a 348-page transcript, taking place during a trial in which all other evidence and argument concerned Mr. Diaz Guzman's molestation of only R. While the testimony in isolation admits of the inference that both R. and D. disclosed allegations of sexual abuse, that would not be a reasonable inference in the context of the entire trial.

17

"If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697. Mr. Diaz Guzman has failed to show that he was prejudiced by Ms. Theroux's testimony, nor has he established that the trial court would have granted a motion for a mistrial. "A mistrial should be granted when the defendant has been so prejudiced that nothing short of a new trial can [e]nsure that the defendant will be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). Mr. Diaz Guzman has not demonstrated a denial of effective representation in this second instance.

## *Ineffective impeachment*

Finally, Mr. Diaz Guzman argues he received ineffective assistance of counsel when his trial lawyer failed to effectively impeach R. There were discrepancies between her trial testimony and information she had provided to investigating officers. Mr. Diaz Guzman's lawyer in the first trial had highlighted the discrepancies by calling the investigating officers to contradict her testimony at trial. In the trial below, Mr. Diaz Guzman did not prove the discrepancies in the same way, relying instead on transcripts of police interviews of R. and confronting her with the discrepancies. Mr. Diaz Guzman argues that this method of impeachment was inferior, ineffective, and deficient; as evidence of its deficiency, he points to the fact that his first trial on the charges resulted in a hung jury.

18

The State counters that "directly confronting the complaining witness about the discrepancies between her interviews with law enforcement and her subsequent trial testimony is much more powerful [than] turning the contradictions into what would appear to be a 'she says, he says she said' contest." Br. of Resp't at 14.

We do not agree with the State that the method of impeachment used below "is much more powerful;" both approaches are generally accepted methods of impeachment. But we do not have to engage in an analysis of which method is more effective because a critical fact undercutting Mr. Diaz Guzman's argument of deficient representation is the fact that this was a retrial.

A strategy that plays out brilliantly in a first trial can never be relied on to play out brilliantly in a retrial. Opposing counsel and witnesses know what to expect. Prophylactic measures will be taken. Witnesses are likely to be better prepared on weak points. The State will take measures to neutralize problems. When the State has the opportunity to inoculate in the second trial against what was devastating contradiction by law enforcement in the first, the same contradiction by law enforcement might prove tedious to the jury in the second trial.

For that reason, a reasonable strategy in a second trial can be to employ a *different* strategy, to preserve some element of surprise. Accordingly, even if Mr. Diaz Guzman's trial lawyer below might favor the approach to impeachment pursued in the first trial, the

19

fact that the State and its witnesses had seen that approach before would be reason enough to try something else.

The strategy followed below was not ineffective. The following is an example of the impeachment:

> [Defense Counsel]: [R.], you testified yesterday that the defendant, you claim, was able to place his penis in your vagina?
> [R.]: I did.
> [Defense Counsel]: Do you recall Detective Bohnet asking you whether or not the defendant ever had intercourse with you back in January of 2011?
> [R.]: At the interview?
> [Defense Counsel]: Yes.
> [R.]: I don't remember, no.
> . . . .
> [Defense Counsel]: Ma'am, could I draw your attention to page 13. And again, I think that has a copier mark, a stray mark on it about halfway through the page, the lines aren't numbered, but do you see an entry by Sergeant Bohnet where he says, "Did he ever rape you?" Do you see that entry?
> [R.]: I did.
> [Defense Counsel]: Okay. My question is do you see that entry?
> [R.]: I do, yes.
> . . . .
> [Defense Counsel]: Has that exhibit been able to refresh your recollection about a question asked to you about intercourse with the defendant?
> [R.]: Yes, it does.
> [Defense Counsel]: And did Sergeant Bohnet ask you: Did you have intercourse with the defendant?
> [R.]: He did, yes.
> [Defense Counsel]: And did you answer—what was your answer to that question?
> [R.]: I said no. But the thing is that—
> THE COURT: No, that's all right.
> [DEFENSE COUNSEL]: I appreciate your answer.

20

THE COURT: You've answered the question. Thank you.

RP (Mar. 13-15, 2013) at 239-41. The same method was used to cross-examine R. about other inconsistencies between her trial testimony and her previous interviews with police officers, including a statement about whether or not Mr. Diaz Guzman threatened her.

"'Deficient performance is not shown by matters that go to trial strategy or tactics.'" *State v. Lewis*, 156 Wn. App. 230, 242, 233 P.3d 891 (2010) (internal quotation marks omitted) (quoting *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001)). The fact that Mr. Diaz Guzman's lawyer elected to handle impeachment in a different but generally accepted fashion in the second trial can be explained as reasonable trial strategy. Here again, deficient performance is not shown.

### III. Cumulative Error

Mr. Diaz Guzman asks that if we find no single reversible error, we consider whether cumulative error deprived him of a fair trial. A court may sometimes determine that although certain errors standing alone "might not be of sufficient gravity to constitute grounds for a new trial, the combined effect of the accumulation of errors" does require a new trial. *State v. Coe*, 101 Wn.2d 772, 789, 684 P.2d 668 (1984). We have found no error.

Affirmed.

No. 31965-2-III
*State v. Diaz Guzman*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Brown, J.*

_____
Lawrence-Berrey, J.

_____
* Judge Stephen M. Brown was a member of the Court of Appeals at the time argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to RCW 2.06.150.