# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                Respondent,<br><br>    v.<br><br>CALVIN PERRY LUARCA,<br><br>                Appellant. | No. 51833-3-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Calvin Luarca appeals his convictions for burglary in the first degree, assault in the fourth degree, interference with the reporting of domestic violence, theft in the second degree, tampering with a witness, and a domestic violence court order violation. He argues that the court erred in allowing the State to admit evidence that he gave a false name as evidence of consciousness of guilt. He contends that the error was not harmless. He also contends that the inclusion of a filing fee in the judgment and sentence (J&S) is a scrivener's error and should be corrected. We affirm the conviction but remand to strike the filing fee.

## FACTS

Luarca had a dating relationship with ZM. After Luarca began acting erratically, accusing ZM of cheating, and becoming increasingly confrontational, ZM ended the relationship over the phone. That same day, Luarca arrived at ZM's house to confront her. An altercation occurred.

ZM called 911 and reported that Luarca assaulted her. She reported that she thought her life was in danger, so she stabbed Luarca with a kitchen knife. When the police responded, ZM told the officers that Luarca had left the house after she had stabbed him.

An officer located Luarca at a local urgent care clinic. He needed to be transported to a hospital for surgery. While paramedics prepped Luarca for transport, they asked him his name. Luarca responded, "Tim Carter." 4 Report of Proceedings (RP) at 406. An officer standing nearby heard the conversation.

After surgery, the police placed Luarca under arrest based on an outstanding federal probation violation warrant. The State subsequently charged Luarca with burglary in the first degree, assault in the fourth degree, interference with the reporting of domestic violence, theft in the second degree, tampering with a witness, and a domestic violence court order violation.

Pretrial, Luarca moved to exclude evidence of his federal probation status and methamphetamine use. The court granted the motions.

At trial, ZM testified to the following. She ended the relationship with Luarca over the phone the morning of the incident because of Luarca's erratic and confrontational behavior. She did not want him around her son. The morning of the incident, over the phone, Luarca "kept just saying over and over . . . I know someone's at the house. I know someone's there. Who is he?" 3 RP at 283.

Luarca told ZM that he was coming over. She replied that it would be better if he did not, because "[he was] acting erratic, and . . . crazy." 3 RP at 284. Upon his arrival, ZM partially opened the door while carrying the knife she had been using to make breakfast. Luarca barged in and ran around the house "looking around for somebody that wasn't there." 3 RP at 287.

Next, Luarca hit ZM on the head, which resulted in her slipping and cutting herself with the knife. She then ran outside and attempted to call emergency services. Luarca followed her, knocked the phone out of her hands, and broke it. ZM ran back inside and locked the door, but Luarca re-entered through the back door. Luarca again hit ZM, and then she stabbed him.

Luarca questioned ZM about the fact that the police found the broken cell phone inside, when she testified that Luarca had knocked it out of her hands outside of the home. ZM responded that she did not know how the phone got back inside. Luarca also questioned ZM why, if she had cut herself, nobody found blood on the broken phone. ZM responded that she did not know. ZM also testified that doctors did not find any injuries on her head from being hit by Luarca.

A neighbor testified that she heard someone yelling for help, so she and another neighbor went outside and called towards the house, asking if anyone needed help. The neighbor saw a person running away from the house. ZM then stuck her head outside of the door and asked the neighbor to call 911.

The State asked the officer who found Luarca at the urgent care if he had heard what name Luarca had given the paramedics. Luarca objected. Outside the presence of the jury, Luarca argued that he had a federal warrant at the time, and the use of an alias indicated he was trying to avoid arrest on the warrant. Luarca argued that because he did not know at that time of any new charges from the incident with ZM, the false name had little to no probative value as to guilty conscience for the charged offenses. The court overruled the objection, stating that a reasonable inference could be made based on the allegations that the false name reflected a consciousness of guilt.

In closing argument, the prosecutor said, "Paramedics asked the defendant what his name was. They need[ed] to identify him. What did he tell them? He told them—he gave them a false name: Tim Carter. Tim Carter. Okay? And we'll get back to that." 6 RP at 636-37. However, the prosecutor did not mention the false name again.

Luarca argued in closing that ZM was being untruthful, and the inconsistencies in her testimony indicated that Luarca and ZM were still in a relationship, she invited him over, and when they argued, she got angry and stabbed him.

The jury found Luarca guilty on all counts.

At sentencing, the court found Luarca indigent and waived all non-mandatory legal financial obligations (LFOs). The court struck the filing fee on Luarca's felony Judgment and Sentence (J&S). It did not strike the filing fee on the misdemeanor J&S, which had a box checked that states, "See companion felony order for financial obligations." Clerk's Papers at 364.

Luarca appeals.

## ANALYSIS

### I. FALSE NAME

Luarca argues that the court erred when it allowed the State to admit evidence that he gave a false name as evidence of consciousness of guilt. He contends that it was inadmissible because he gave the false name to avoid detection for a federal probation violation warrant and not the crime charged. He also argues that it was inadmissible because he could not fairly rebut the inference of guilt from the false name without also informing the jury of his probation violation, which the court had already determined was prejudicial. We disagree with Luarca.

4

A.       Legal Principles

We review a trial court's evidentiary rulings for an abuse of discretion. *State v. Finch*, 137 Wn.2d 792, 810, 975 P.2d 967 (1999). A court abuses its discretion when its evidentiary ruling is manifestly unreasonable, or when it is exercised on untenable grounds or for untenable reasons. *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004).

"When faced with evidence which can be used both properly and improperly, the task of the trial court is to balance probative value against unfair prejudice . . . . How this balance should be struck is necessarily a matter addressed to the discretion of the trial court." *State v. Chase*, 59 Wn. App. 501, 507-08, 799 P.2d 272 (1990).

Evidence of other crimes, wrongs, or acts is inadmissible to prove character and show action in conformity therewith. ER 404(b); *State v. Gresham*, 173 Wn.2d 405, 420, 269 P.3d 207 (2012). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b).

Evidence of flight, resisting arrest, use of a false name, and other related conduct may be admissible under ER 404(b) to prove the defendant's consciousness of guilt. *State v. Freeburg*, 105 Wn. App. 492, 497-98, 20 P.3d 984 (2001). Evidence of a false name is admissible if it allows a reasonable inference of consciousness of guilt of the charged crime. *Freeburg*, 105 Wn. App. at 497-98.

B.     Analysis

In *State v. Hebert*, a jury convicted the defendant of burglary and theft.  33 Wn. App. 512, 513, 656 P.2d 1106 (1982).  Evidence at trial showed that the police apprehended the defendant, but during a pat-down search, he broke free and ran.  *Hebert*, 33 Wn. App at 513.  The police recaptured him shortly thereafter.  *Hebert*, 33 Wn. App at 513.

On appeal, the defendant argued that the court erred by admitting evidence of his flight because the danger of prejudice outweighed its probative value.  *Hebert*, 33 Wn. App at 514-15. He argued that he fled because the officer knew of his status as a parolee who possessed marijuana and not because of his involvement in a burglary.  *Hebert*, 33 Wn. App at 515.  He argued that admission of the flight testimony would require him to admit his parole status or stay silent and allow the jury to draw an inference of guilt from his flight.  *Hebert*, 33 Wn. App at 515.

In deciding that the court did not abuse its discretion, we stated that the flight "reasonably could be considered a deliberate effort to evade arrest and prosecution for the burglary and could also reasonably be considered probative of his consciousness of guilt."  *Hebert*, 33 Wn. App at 515.

Here, Luarca claims that he gave a false name, not in an attempt to evade arrest for the crimes charged, but for another reason.  Luarca contends that he gave a false name because he wanted to avoid arrest for a probation violation.  He argues, as did the defendant in *Hebert*, that he could not "rebut the inference of guilt urged by the State without also informing the jury of th[e] highly prejudicial explanation for the false name."  Br. of Appellant at 9.  While the court determined that evidence of the probation violation warrant was inadmissible, it also determined that based on ZM's allegations, the jury could reasonably infer that he provided a false name as consciousness of guilt for the crimes charged.  The record supports this determination.

6

The trial testimony clearly showed that Luarca had an altercation with ZM that resulted in him fleeing the home after she stabbed him. Luarca also knocked a phone out of ZM's hand as she attempted to call 911. While he may not have known the charges against him when he gave a false name, he likely knew the police were looking for him for the incident at ZM's home. He also knew that the police had positioned themselves near him when he provided the false name.

Like in *Hebert*, we agree that the evidence of Luarca providing a false name, "reasonably could be considered a deliberate effort to evade arrest and . . . [could be] considered probative of his consciousness of guilt." 33 Wn. App at 515. The balance between the probative and prejudicial nature of the testimony is "necessarily a matter addressed to the discretion of the trial court." *Chase*, 59 Wn. App. at 508 (determining that the trial court did not abuse its discretion when it admitted evidence of defendant giving a false name despite the fact that it could also have been offered for an improper purpose). We conclude that the trial court did not abuse its discretion in admitting the contested evidence.

III.     LFOs

Luarca argues that the court erred by imposing a criminal filing fee on his misdemeanor J&S because at sentencing the court found him indigent, it waived all non-mandatory LFOs, and because his felony J&S did not impose the criminal filing fee. The State concedes that the filing fee should be stricken, and we agree.

Recent legislation prohibits the imposition of certain LFOs, including the criminal filing fee, on a defendant who is indigent under RCW 10.101.010(3)(a)-(c). RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018).

At sentencing, the court found Luarca indigent and waived all non-mandatory LFOs. The court entered two J&S. The court struck the filing fee from Luarca's felony J&S, but failed to strike it from the misdemeanor J&S. We remand to the trial court to strike the criminal filing fee from the misdemeanor J&S.

We affirm the conviction but remand to strike the criminal filing fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Sutton, J.